MEMORANDUM DECISION IN MANDAMUS ON OBJECTIONS TO MAGISTRATE'S DECISION
Relator, Judy Johnston, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order finding that no settlement agreement had been reached prior to the death of the claimant, relator's late husband, James E. Johnston, and to issue an order finding that a binding settlement agreement existed under which relator was entitled to $50,000.
The claimant suffered a work-related injury on April 30, 1992, arising out of his employment as a truck driver for TFE, Inc. His claim was allowed for "Sprain lumbar; lumbar disc displacement with myelopathy at L3-4 left L5-S1 right." The claimant subsequently filed an application with the Bureau of Workers' Compensation ("BWC") requesting approval of the final settlement of his claim for $90,000. The claimant's state-fund employer did not oppose the settlement and the application was signed by a representative of the employer.
The claimant died of a myocardial infarction on January 18, 1998. On January 21, 1998, relator's daughter notified the BWC of Mr. Johnston's death. On January 23, 1998, the BWC informed counsel for claimant that a settlement offer of $50,000 would be approved. At or about that time, claimant's counsel again informed the BWC of the claimant's death.
On January 27, 1998, the BWC issued an order denying the claimant's application for a settlement agreement based upon abatement of the claim as a result of claimant's death on January 18, 1998. The denial was premised upon the absence of an agreement regarding the claim at the time of the claimant's death.
Relator subsequently filed an application requesting allowance of the decedent's settlement application. The matter was referred to a staff hearing officer for the commission, and heard on July 8, 1998. The hearing officer issued an order stating in pertinent part:
 * * * Industrial Commission Policy Memo no. 0.7 indicates that settlements are not subject to abatement if the settlement has reached the stage of being approved by the Administrator. However, in this case the earliest evidence of BWC approval is 01/23/1998, which was five days after claimant's death. Therefore, the application was abated by claimant's death, and the BWC order of 01/27/1998 is affirmed.
Relator's request for reconsideration of the hearing officer's order was denied by order mailed on September 2, 1998. Relator then filed the present mandamus action in this court.
This matter was referred to a court-appointed magistrate, pursuant to Civ.R. 53 and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate has filed a decision, based upon findings of fact and conclusions of law, and has recommended that this court deny the requested writ of mandamus. Relator has filed objections to the decision of the magistrate.
Upon examination of the decision of the magistrate and an independent review of the file, this court adopts the findings of fact and conclusions of law of the magistrate. For the reasons hereinafter stated, the relator's objections to the decision and recommendation of the magistrate will be overruled.
The magistrate found that no settlement had been approved in the instant case. The magistrate noted the applicable law at R.C. 4123.65:
 (A) A state fund employer or the employee of such an employer may file an application with the administrator of workers' compensation for approval of a final settlement of a claim under this chapter. The application shall include the settlement agreement, be signed by the claimant and employer, and clearly set forth the circumstances by reason of which the proposed settlement is deemed desirable and that the parties agree to the terms of the settlement agreement provided that the agreement need not be signed by the employer if the employer is no longer doing business in Ohio. * * *. Every self-insuring employer that enters into a final settlement agreement with an employee shall mail, within seven days of executing the agreement, a copy of the agreement to the administrator and the employee's representative. The administrator shall place the agreement into the claimant's file.
 (B) Except as provided in divisions (C) and (D) of this section, a settlement agreed to under this section is binding upon all parties thereto and as to items, injuries, and occupational diseases to which the settlement applies.
 (C) No settlement agreed to under division (A) of this section or agreed to by a self-insuring employer and the self-insuring employer's employee shall take effect until thirty days after the administrator approves the settlement for state fund employees and employers, or after the self-insuring employer and employee sign the final settlement agreement. During the thirty-day period, the employer, employee, or administrator, for state fund settlements, and the employer or employee, for self-insuring settlements, may withdraw consent to the settlement by an employer providing written notice to the employer's employee and the administrator or by an employee providing written notice to the employee's employer and the administrator, or by the administrator providing written notice to the state fund employer and employee.
 (D) At the time of agreement to any final settlement agreement under division (A) of this section or agreement between a self-insuring employer and the self-insuring employer's employee, the administrator, for state fund settlements, and the self-insuring employer, for self-insuring settlements, immediately shall send a copy of the agreement to the industrial commission who shall assign the matter to a staff hearing officer. The staff hearing officer shall determine, within the time limitations specified in division (C) of this section, whether the settlement agreement is or is not a gross miscarriage of justice. If the staff hearing officer determines within that time period that the settlement agreement is clearly unfair, the staff hearing officer shall issue an order disapproving the settlement agreement. If the staff hearing officer determines that the settlement agreement is not clearly unfair or fails to act within those time limits, the settlement agreement is approved.
Pursuant to the language of R.C. 4123.65(C), the magistrate noted that any settlement offer submitted by claimant, even if unopposed by the claimant's state-fund employer, would not "take effect until thirty days after the Administrator approves the settlement." Although the application had been filed with the administrator of the BWC, approval was not forthcoming prior to the claimant's death on January 18, 1998, since it was not until January 23, 1998 that the BWC countered with a $50,000 settlement offer.
The magistrate noted a similarity to the present facts to those in Finnerty v. Yellow Freight Sys., Inc. (1988),47 Ohio App.3d 186, although that case involved a self-insured employer rather than a state-fund employer, as in the case sub judice. InFinnerty, the employer and employee agreed to a settlement, but the claimant died prior to the expiration of the thirty-day period in which either could have withdrawn his consent under R.C.4123.65. In upholding the commission's abatement of the claim and refusal to enforce the settlement, the appellate court applied Ohio Adm. Code 4123-5-21(A) which then stated, as it currently does:
 When a claimant dies, action on any application filed by the claimant, and pending before the bureau or the industrial commission at the time of his death, is abated by claimant's death.
The magistrate noted that the rationale in Finnerty, although it predates certain amendments to R.C. 4123.65, and involved a self-insured rather than a state-fund employer, was applicable to the case before us. The magistrate's interpretation was thatFinnerty stands for the proposition that even a jointly-filed application for settlement, signed by a self-insured employer and the claimant, which requires only ministerial approval by the commission, was subject to abatement under Ohio Adm. Code4123-5-21(A). Approval by the administrator, therefore, is all the more a prerequisite to a binding settlement in state fund employer claims, where the administrator's responsibilities toward the state fund are fully implicated and review of the appropriateness of the proposed settlement is thus more stringent.
The magistrate further concluded that evidence submitted by relator failed to establish that there was any time constraint imposed upon the BWC for processing settlement applications. Relator submitted the affidavit of Allison Moss, a principal in a firm known as Settlement Consultants which is in the business of representing and assisting claimants in the settlement of BWC claims. Ms. Moss' affidavit stated that, as a result of her familiarity and interaction with the BWC, she was aware that it was the policy and procedure of the BWC to address submitted settlement agreements within ninety days of filing. Relator claims this alleged policy created a legal duty upon the BWC to approve or otherwise respond to the claimant's settlement agreement within ninety days, and that the BWC, in taking over eight months to authorize a counter settlement offer of $50,000 had breached this legal duty. The magistrate concluded that Ms. Moss' affidavit provided "nothing more than her opinion" and did not demonstrate any statute or administrative code section which would have created such duty.
Relator has objected to the magistrate's report on two grounds: first, the relator asserts that the magistrate should have given conclusive weight to the affidavit of Ms. Moss, because it was stipulated to by respondent, and clearly established a duty on the part of the BWC to address settlement agreements more promptly than in the present case. This objection largely reargues matters already presented to and considered by the magistrate, and therefore, will not be extensively re-addressed here. We note, however, that respondent's stipulation to the affidavit could in no way be construed as a stipulation to a state of the law other than as it is written by the legislature and interpreted by the courts, and we cannot give it such an effect.
With respect to the magistrate's reliance upon Finnerty, we also find no merit to relator's objection. Relator relies upon a change of statutory language between the decision in Finnerty
and the present. At present, R.C. 4123.65 provides, in summary, that for a state-fund employer and employee, a settlement agreement, submitted by the employee/claimant and approved by the employer, is still subject to approval by the administrator of the BWC. During a thirty-day period after approval by the administrator, the employer, employee, or administrator can withdraw previously given consent to the settlement. R.C.4123.65(C). With respect to state-fund employers, after approval by the administrator, the agreement is referred to the commission and assignment to a staff hearing officer, who shall determine within the thirty-day limitation of R.C. 4123.65(C), "whether the settlement agreement is or is not a gross miscarriage of justice." If not, the settlement agreement shall be deemed approved. R.C.4123.65(D).
In contrast, relator emphasizes that at the timeFinnerty was decided, R.C. 4123.65 required only that the settlement application be signed by the claimant. Since the current version of the statute requires both the claimant and employer to sign the settlement application, relator reasons, all the "necessary parties" to the settlement have agreed, and the settlement would no longer be "pending" and would thus not abate under Ohio Adm. Code 4123-5-21, which applies to "pending" applications only.
We cannot accept relator's interpretation of the statute. The current version of R.C. 4123.65 still requires the approval of the administrator before a settlement submitted jointly by the claimant and state-fund employer will take effect. R.C. 4123.65(C). It is undisputed in the present case that the administrator's approval was not forthcoming prior to the claimant's death. Therefore, no final settlement agreement existed between the parties since the administrator remains a necessary party to any settlement agreement under the current version of the statute. State ex rel. Theodore v. IndustrialCommission (June 28, 1996), Franklin App. No. 95APD09-1234, unreported (Memorandum Decision). The claimant having become deceased prior to the BWC's approval of a reduced $50,000 settlement, he could not have authorized the settlement. We therefore agree with the magistrate, that, at the time of the decedent's death, which preceded any form of approval by the BWC, any and all action relating to claimant's settlement application abated under Ohio Adm. Code 4123-5-21(A).
We additionally note that the present case does raise serious concerns regarding the advantage that accrues to the BWC through sluggish processing of settlement applications, since sufficient delay could well lead to a significant number of claims abating due to the death of the claimant, with a corresponding decrease in settlement expenditures to the workers' compensation system. As the Supreme Court of Ohio noted in State ex rel.Nossal v. Terex Div. of I.B.H. (1999), 86 Ohio St.3d 175, 177:
 * * * To deny benefits because a claimant fails to live long enough to survive delays in the administrative process is illogical and unfair.
(Quoting Breidenbach v. Mayfield (1988), 37 Ohio St.3d 138, 143, H. Brown, J., dissenting). Such a delay, in the present case, appears to have worked exactly the type of inequitable result contemplated in Nossal. Nonetheless, we find that no other statutory basis exists upon which to impose a time constraint upon the BWC for the processing of settlement applications. However, we are without authority to amend any pertinent statute or administrative regulation in order to address what is an unequitable result.
Therefore, while noting the harsh results in the present case, we find that relator's objections to the magistrate's decision and recommendation must be overruled. Relator can show no clear legal right to a writ of mandamus to compel respondent to be bound by the settlement agreement. Based upon the foregoing, the requested writ of mandamus is denied.
Objections overruled; writ of mandamus denied.
BRYANT, J., concurs.
TYACK, J., dissents.